## WINSTON CLARKE *v.* COMMISSIONER OF CORRECTION
### (14760)

O'Connell, Lavery and Heiman, Js.

Argued May 31—officially released October 1, 1996

*James A. Shanley, Jr.*, special public defender, for the appellant (petitioner).

*Rita M. Shair,* assistant state's attorney, with whom were *Michael Dearington,* state's attorney, *Christopher Alexy,* assistant state's attorney, and, on the brief, *James A. Killen,* for the appellee (respondent).

HEIMAN, J. The petitioner appeals[1] from the judgments of the habeas court dismissing his petitions for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court (1) applied an incorrect legal standard in evaluating his claim of actual innocence and (2) improperly dismissed his claim of ineffective assistance of counsel by incorrectly evaluating the credibility of a witness in the habeas proceedings. We affirm the judgments of the habeas court.

The following history of the case is necessary for a resolution of this appeal. The petitioner was convicted, after a jury trial, of possession of narcotics with intent to sell by a person who is not drug-dependent and of possession of a controlled substance with intent to sell. The petitioner received a total effective sentence of thirteen years in the custody of the commissioner of correction.

The jury could reasonably have found the following facts in support of the petitioner's conviction. On April 5, 1989, Earl Noble was the owner of an automobile repair shop at the corner of Elliot and Davenport Streets in New Haven. Detective Vincent Raucci of the New Haven police department observed a white Plymouth with an out-of-state license plate parked on Elliot Street in front of Noble's garage. Raucci recognized the person on the driver's side of the Plymouth as the petitioner, whom he knew from the neighborhood. Raucci also knew that the petitioner had been involved in drug transactions.

---

[1] The habeas court, pursuant to the provisions of General Statutes § 52-470 (b), certified that a question was involved in its decision that ought to be reviewed by an appellate court.

Raucci noticed that a male and female were seated on the passenger side of the Plymouth. He observed the petitioner, who was wearing a black leather coat, leave the vehicle and enter the garage. Raucci was unable to determine whether the petitioner was carrying anything under the coat.

The petitioner entered the garage and, within a period of two minutes, came out and walked back to the car. As the petitioner approached the car, Raucci observed that the petitioner was carrying a small plastic bag containing a white substance. The petitioner displayed the bag and its contents to the passengers in the Plymouth. Raucci and his partner, Detective Robert Brooks, exited from their vehicle. The petitioner, upon seeing Raucci and Brooks, turned and began to walk rapidly toward the garage. Raucci called out to the petitioner, who responded by holding up a finger, as if to indicate that the detectives should wait a minute. The petitioner then ran into the garage. Raucci and Brooks proceeded to chase the petitioner.

Andrew Fowlin was in the garage when the petitioner entered. The petitioner asked Fowlin to hold two bags: a black leather bag and a plastic bag. Raucci and Brooks entered the garage. Fowlin dropped the leather bag to the floor and tucked the plastic bag into his pocket just as the officers entered the garage.

When the officers entered the garage, they observed the black leather bag on the floor between the petitioner and Fowlin. At the same time, the officers also observed the petitioner making a gesture with his hands toward Fowlin. Fowlin immediately gave the police the plastic bag and some cash, and stated that the petitioner had given those items to him. After examining the black leather bag, Raucci realized that he had seen the leather bag in the petitioner's possession on a prior occasion when he had observed the petitioner and his son in an

automobile. The police discovered over $5000, seven bags of marijuana and nine and one-half ounces of cocaine in the leather bag.

The petitioner absconded prior to the completion of his jury trial. He was convicted, and he was sentenced by the trial court in absentia. An appeal taken in his behalf was dismissed because his whereabouts were unknown. See, e.g., *State* v. *Leslie*, 166 Conn. 393, 394–95, 349 A.2d 843 (1974).

The petitioner filed two separate petitions for writs of habeas corpus. The habeas court consolidated the petitions, and on November 8, 1994, the petitioner filed a revised amended petition. In that petition, the petitioner asserted that he was (1) denied effective assistance of counsel, and (2) factually innocent. Following an evidentiary hearing before the habeas court, the court dismissed the petition in each file. This appeal follows.

I

The petitioner first asserts that the trial court applied an incorrect legal standard in deciding the petitioner's claim of actual innocence.[2] We conclude that the petitioner's claim of actual innocence was insufficient to trigger an evaluation of it by the habeas court for the purpose of determining whether the petitioner had made a showing of actual innocence sufficient to warrant a new trial.

"We initially turn to our Supreme Court's decision in *Summerville* v. *Warden*, 229 Conn. 397, 641 A.2d 1356

---

[2] In his amended petition, the petitioner asserted that he was "factually innocent." On appeal to this court, he indicates that his claim in the habeas court was one of "actual innocence." Although the term "actual innocence" does not appear in the amended petition, we nonetheless view the petitioner's claim as one of actual innocence and attach no significance to the slightly different terminology that he used in his amended petition. See *Williams* v. *Commissioner of Correction*, 41 Conn. App. 515, 523 n.3, 677 A.2d 1 (1996).

(1994), for enlightenment regarding substantial claims of actual innocence. In *Summerville,* the court held that 'a substantial claim of actual innocence is cognizable by way of a petition for a writ of habeas corpus, even in the absence of proof by the petitioner of an antecedent constitutional violation that affected the result of his criminal trial.' Id., 422. The court recognized that the standard of proof for such claims 'should be more demanding than a probability of a different result.' Id., 431. The probability of a different result is a component of the standard used to evaluate a petition for a new trial on the ground of newly discovered evidence. *Taborsky* v. *State,* 142 Conn. 619, 623, 116 A.2d 433 (1955) (standard for new trial primarily whether injustice done and whether probable that if new trial conducted, different result would be reached). The *Summerville* court concluded that such a standard did not fit the interests at stake in a habeas petition where the petitioner makes a substantial claim of actual innocence; *Summerville* v. *Warden,* supra, 431; but declined to specify which 'more demanding' legal standard or burden of proof for such a claim of actual innocence should govern. Id., 432–33." *Williams* v. *Commissioner of Correction,* 41 Conn. App. 515, 523–24, 677 A.2d 1 (1996).

Here, the habeas court adopted the standard set out by Justice White in his concurring opinion in *Herrera* v. *Collins,* 506 U.S. 390, 429, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993). To be entitled to relief under that standard, a "petitioner would at the very least be required to show that based on proffered newly discovered evidence and the entire record before the jury that convicted him, *no rational trier of fact could [find] proof of guilt beyond a reasonable doubt.*" (Emphasis added; internal quotation marks omitted.) Id. (White J., concurring). The petitioner claims that

the trial court should not have applied Justice White's standard.

Although the *Summerville* court reviewed a number of standards, including the standard set forth by Justice White in *Herrera*, the court declined to specify a legal standard for a claim of actual innocence. *Summerville* v. *Warden*, supra, 229 Conn. 432–36. The court declined to decide the legal standard issue because the court concluded that, under any of the standards it had reviewed, the evidence put forth by the petitioner "was insufficient to trigger an evaluation of it by the habeas court for the purpose of determining whether the petitioner had made a showing of actual innocence sufficient to require a new trial." Id., 436–37.

In light of *Summerville*, this court has concluded that although no governing standard of proof exists under which a claim of actual innocence should be evaluated, such a claim *must*, nonetheless, be based on *newly discovered evidence*. *Williams* v. *Commissioner of Correction*, supra, 41 Conn. App. 527. We concluded that "a writ of habeas corpus cannot issue unless the petitioner *first* demonstrates that the evidence put forth in support of his claim of actual innocence is newly discovered." (Emphasis added.) Id., 530. Moreover, "[w]e incorporate[d] the due diligence component of the standard used in determining whether a new trial should be granted because of newly discovered evidence in the determination of whether a writ of habeas corpus should issue as a result of a petitioner's claim of actual innocence." Id., 528. Thus, we held that "a petitioner must demonstrate, by a preponderance of the evidence, that the proffered evidence is such that it could not have been discovered earlier by the exercise of *due diligence*." (Emphasis in original.) Id.

In examining the concept of due diligence, as that concept has been used in determining whether a new

trial should be granted because of newly discovered evidence, we explained: "Due diligence does not require omniscience. . . . Due diligence means doing everything reasonable, not everything possible. . . . The petitioner for a new trial must be diligent in his efforts fully to prepare his cause for trial; and if the new evidence relied upon *could have been known with reasonable diligence,* a new trial will not be granted. . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 528–29.

Thus, we must first make a determination as to whether the petitioner's claim of actual innocence is in fact predicated on newly discovered evidence, as that term has been defined in *Williams.* Id., 527.

Here, the evidence that the petitioner asserts supports his claim of actual innocence consists of the testimony of Noble. At the habeas hearing, Noble testified that he was working under a car when Fowlin came into the shop on the day of the petitioner's arrest. Noble stated that Fowlin often stopped at the garage after school and was a suspected drug dealer. Noble claimed that he observed Fowlin wearing a black leather knapsack when he came into the garage. Noble asserted that he remained under the car that he was working on for about twenty-five minutes after Fowlin arrived and that Fowlin remained in the garage.

Noble asserted that he next heard noise and heard someone say, "Come out from under the car." Noble testified that when he emerged from underneath the car, he saw three or four detectives, the petitioner and Fowlin. Noble said that an officer had the petitioner in custody near the door, that Fowlin was standing next to where Noble had rolled out from under the car, and that the officer standing next to the petitioner was holding the knapsack.

Noble testified that he gave the police permission to search the garage and that they opened the knapsack in front of him. He testified that when the officers turned over the knapsack and dumped its contents onto the ground, he observed money and drugs fall out of it. He asserted that he had not seen the petitioner with a bag. Noble testified that he knew the petitioner from the community and that he knew the petitioner's son.

Noble testified that he was interviewed by two police officers and that he told them that he had never seen the petitioner with a bag. He also testified that he was not called as a witness at trial and that every November (the month in which the criminal trial took place) he went to Florida for several weeks to visit with his mother.

On cross-examination, Noble testified that from the time Fowlin came into the garage until the time the police entered the garage, he was under a vehicle installing a clutch. Noble said that he was under the car looking up at the bottom of the car. He conceded that from that vantage point, all he could see were Fowlin's feet and ankles, not any activity at the front of the garage.

The petitioner also testified at the habeas proceeding. He testified that the night before his arrest he had contacted a member of Fowlin's family for the purpose of purchasing two ounces of cocaine for a friend. He was told that he could have the cocaine the next day and that he should go to Noble's garage about midday. The petitioner stated that he was not told whom he would meet or who would deliver the drugs. The petitioner asserted that he was not carrying a bag when he went to the garage but that Fowlin had a bag.

The petitioner claimed that he told his attorney about Noble and to contact him. The petitioner asserted that his attorney told him that the prosecutor had already

contacted Noble and that Noble had told the prosecutor that he knew nothing of the events that occurred at his repair shop. The petitioner asserted that his lawyer did not contact Noble.

Attorney Brian Carlow also testified. He stated that he became a deputy assistant public defender in 1985 and was assigned to part A criminal in New Haven in November, 1988. He testified that he replaced the petitioner's original public defender.

Carlow testified that when he was assigned to the petitioner's defense, he first reviewed the entire file and filed discovery motions. He also stated that he interviewed the petitioner on many occasions prior to trial. Carlow testified that two witnesses were interviewed: Keisha Frederick, who was one of the passengers in the petitioner's car, and Noble. Carlow stated that Noble was interviewed by telephone by Robert Sisson, an investigator employed by the office of the public defender.

Carlow testified that, on the basis of on the results of the interview of Noble, he concluded that Noble would testify that at the time of the incident in question (1) he was working under a car, (2) he did not notice when Fowlin came into the garage, (3) he did not notice when the petitioner came into the garage, (4) the first thing that he noticed was when the police came into the garage, and (5) he did not know who had brought the black bag into the garage. Carlow claimed that, as a result of the interview, he determined that he would not use Noble as a defense witness at trial because he would not be helpful. Carlow testified that the decision not to call Noble as a witness was a tactical decision.

Carlow claimed that as a precautionary measure, he attempted to serve Noble with a subpoena at the time of trial. Carlow asserted, however, that he was unable to make in-hand service and that the person making

service left a copy of the subpoena at the address that Noble had given to the police. Moreover, Carlow stated that he did not believe that Noble would be of material assistance in the defense of the petitioner.

No evidence was produced at the habeas hearing that would have permitted the court properly to conclude that Noble's testimony could not have been discovered as a result of due diligence. See *Williams* v. *Commissioner of Correction*, supra, 41 Conn. App. 529. The evidence showed that Noble was interviewed by a defense investigator prior to trial and that Noble could have been called as a defense witness by Carlow at trial. The evidence showed, however, that Carlow determined that Noble would not be a useful defense witness and that Noble should therefore not be called as a defense witness at trial. Had Noble been called to testify at trial, his version of the events in question would have been revealed at that time. The fact that Noble may have described the incident in question differently to the defense investigator than he did on direct examination at the habeas hearing does not mean that Noble's testimony, regardless of its substance, could not have been discovered in the exercise of due diligence. We conclude, upon review of the evidence presented at the habeas hearing, that the petitioner failed to demonstrate that Noble's testimony could not have been discovered by the exercise of due diligence, and, therefore, such evidence does not constitute newly discovered evidence. See id. Thus, "the petitioner's claim of actual innocence is lacking the requisite predicate for evaluation under any legal standard and must fail. See *Summerville* v. *Warden*, supra, 229 Conn. 397." *Williams* v. *Commissioner of Correction*, supra, 529.

Under the facts of this case, "it would be no more necessary for this court to answer the question left open in *Summerville*, namely, what is the appropriate standard for habeas courts to apply when evaluating a

substantial claim of actual innocence, absent proof of an antecedent constitutional violation that affected the result of his criminal trial, than it was necessary for the Supreme Court in *Summerville* to establish such a standard. The *Summerville* court failed to reach the issue of which standard of proof to apply because under any of the various standards considered by the court, from the most stringent to the most relaxed, the petitioner's evidence fell short of establishing that the writ of habeas corpus should be issued on the ground that the petitioner was actually innocent." Id., 529–30. We fail to reach the issue as well. See id., 530.

Thus, because the petitioner failed to demonstrate before the habeas court that the evidence put forth in support of his claim of actual innocence is newly discovered, we conclude that the habeas court properly denied the petitioner's writ of habeas corpus. See id. Our conclusion, however, is based on different grounds than that set out by the habeas court. We therefore do not adopt the legal standard employed by the habeas court in arriving at its result, although we affirm the result. See id.[3]

## II

The petitioner next asserts that the habeas court improperly dismissed his claim of ineffective assistance of counsel by incorrectly evaluating the credibility of Noble. The petitioner argues that, on the basis of Noble's habeas testimony, the habeas court should have determined that Carlow's trial tactics concerning Noble constituted ineffective assistance of counsel pursuant to *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). We are unpersuaded.

The petitioner claimed before the habeas court that he was rendered ineffective assistance of counsel due

---

[3] We may affirm a trial court's result on different grounds if the same result is required by law. *Kelley* v. *Bonney*, 221 Conn. 549, 592, 606 A.2d 693 (1992).

to Carlow's failure to conduct an adequate pretrial investigation regarding Noble's knowledge of the incident in question and his failure to call Noble as a witness at trial. The habeas court heard testimony from the petitioner, Carlow and Noble, and evaluated the petitioner's claims of ineffective assistance of counsel under the proper two-pronged analysis set forth by the United States Supreme Court in *Strickland* v. *Washington*, supra, 466 U.S. 668. "Under *Strickland*, the petitioner must show that (1) defense counsel's performance was not reasonably competent or within the range of competence expected of attorneys with ordinary training and skill in criminal law; id., 687–88; and (2) but for counsel's substandard performance, there is a reasonable probability that the result of the proceeding would have been different. Id., 694." *Williams* v. *Commissioner of Correction*, supra, 41 Conn. App. 518. The habeas court determined that Carlow's investigation of Noble's knowledge of the incident and his decision not to call Noble as a witness fell within the wide range of competent representation expected of a criminal defense attorney.

The habeas court's determination as to whether the petitioner's constitutional right to effective assistance of counsel has been violated is subject to plenary review by this court. *Evans* v. *Commissioner of Correction*, 37 Conn. App. 672, 679, 657 A.2d 1115, cert. denied, 234 Conn. 912, 660 A.2d 354 (1995). We thus examine the conclusions of the court in light of the testimony and record before it. The testimony of Carlow revealed that an investigator, on Carlow's behalf, had conducted an investigation into Noble's knowledge of the incident in question. On the basis of that investigation, Carlow concluded that Noble's testimony would not be helpful to the petitioner because Noble claimed not to have seen the incident. Moreover, Carlow's testimony as to Noble's recollection of the incident was confirmed by the petitioner's testimony that the state had also inter-

viewed Noble and determined that Noble's recollection would not yield any useful information. Thus, the habeas testimony revealed that Carlow investigated Noble's knowledge of the incident and made a tactical decision not to call Noble as a witness at trial based on that investigation.

" 'In a case that is tried to the court, such as the present case, the judge is the sole arbiter of the credibility of witnesses, and the weight to be given to their specific testimony.' " *Williams* v. *Commissioner of Correction,* supra, 41 Conn. App. 522. The habeas court evaluated all of the testimony before it and determined that "[t]he petitioner has failed to meet his burden of proving that Attorney Carlow's performance fell below an objective standard of reasonableness." We agree with that determination. Carlow's decision not to call Noble was a professional judgment made after a proper investigation and with a thorough understanding of the petitioner's claims and the existing evidence. His decision not to call Noble as a witness at trial fell into the category of trial strategy or judgment calls that we have, for a long time, declined to second guess. *Davis* v. *Warden,* 32 Conn. App. 296, 305, 629 A.2d 440, cert. denied, 227 Conn. 924, 632 A.2d 701 (1993).

Thus, on the basis of our review of the habeas transcript and the entire record, we conclude that the habeas court correctly determined that the performance of Carlow fell within the wide range of competence expected of attorneys with ordinary training and skill in criminal law, and that the court properly found that the petitioner was not deprived of his constitutionally mandated right to effective assistance of counsel.

The judgments are affirmed.

In this opinion the other judges concurred.