# WINSTON CLARKE *v.* COMMISSIONER
# OF CORRECTION
# (SC 15575)

Borden, Berdon, Norcott, Katz and McDonald, Js.

Argued January 19—officially released June 22, 1999

*James A. Shanley, Jr.,* special public defender, for the appellant (petitioner).

*Rita M. Shair,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, *James A. Killen,* supervisory assistant state's attorney, and *John Waddock* and *Christopher Alexy,* assistant state's attorneys, for the appellee (respondent).

*Ann M. Parent* filed a brief for the Connecticut Civil Liberties Union Foundation as amicus curiae.

*Opinion*

BORDEN, J. In this case, we granted certification to appeal from the judgment of the Appellate Court in order to consider the important question of whether a habeas corpus petitioner who claims actual innocence of the crime of which he stands convicted must establish that his claim of innocence is sustained by newly discovered evidence. The Appellate Court had concluded that the petitioner, Winston Clarke, was required to establish his innocence by such evidence, and that the evidence that he had put forth in support of his claim of innocence did not meet that standard. *Clarke* v. *Commissioner of Correction,* 43 Conn. App. 374, 384, 682 A.2d 618 (1996). Accordingly, the Appellate Court affirmed the habeas court's denial of the writ. Id. We then granted certification to appeal, limited to that issue.[1] We conclude, however, after having examined the record on appeal and considered the briefs and oral arguments of the parties, that the appeal should be dismissed on the ground that certification to appeal was improvidently granted.

[1] We granted certification to appeal limited to the following issue: "Did the Appellate Court properly conclude that a habeas corpus petitioner alleging his innocence must show that his claim of innocence is sustained by newly discovered evidence?" *Clarke* v. *Commissioner of Correction,* 239 Conn. 945, 686 A.2d 120 (1996).

After a jury trial in November, 1990, the petitioner was convicted of possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b),[2] and of possession of a controlled substance with intent to sell in violation of General Statutes § 21a-277 (b).[3] The petitioner, however, failed to appear for the last day of

[2] General Statutes § 21a-278 provides: "(a) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person one or more preparations, compounds, mixtures or substances containing an aggregate weight of one ounce or more of heroin, methadone or cocaine or an aggregate weight of one-half gram or more of cocaine in a free-base form or a substance containing five milligrams or more of lysergic acid diethylamide, except as authorized in this chapter, and who is not, at the time of such action, a drug-dependent person, shall be imprisoned for a minimum term of not less than five years nor more than twenty years; and, a maximum term of life imprisonment. The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years or, (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution.

"(b) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marijuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years or, (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution."

[3] General Statutes § 21a-277 provides: "(a) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic

the jury trial and for the sentencing in February, 1991. Accordingly, he was sentenced in absentia to an effective term of thirteen years incarceration on both convictions. Although the record of this appeal does not disclose precisely when and how, it is obvious that he subsequently was apprehended and remanded to the custody of the respondent, the commissioner of correction.

In October, 1994, the petitioner filed an amended petition claiming actual innocence of the offenses of

substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned; and for a second offense shall be imprisoned not more than thirty years and may be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned.

"(b) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with intent to sell or dispense, possesses with intent to sell or dispense, offers, gives or administers to another person any controlled substance, except a narcotic substance, or a hallucinogenic substance other than marijuana, except as authorized in this chapter, may, for the first offense, be fined not more than twenty-five thousand dollars or be imprisoned not more than seven years or be both fined and imprisoned; and, for each subsequent offense, may be fined not more than one hundred thousand dollars or be imprisoned not more than fifteen years, or be both fined and imprisoned.

"(c) No person shall knowingly possess drug paraphernalia in a drug factory situation as defined by subdivision (20) of section 21a-240 for the unlawful mixing, compounding or otherwise preparing any controlled substance for purposes of violation of this chapter.

"(d) As an alternative to the sentences specified in subsections (a) and (b) of this section, the court may sentence the person to the custody of the Commissioner of Correction for an indeterminate term not to exceed three years or the maximum term specified for the offense, whichever is the lesser, and, at any time within such indeterminate term and without regard to any other provision of law regarding minimum term of confinement, the Commissioner of Correction may release the convicted person so sentenced subject to such conditions as he may impose including, but not limited to, supervision by suitable authority. At any time during such indeterminate term, the Commissioner of Correction may revoke any such conditional release in his discretion for violation of the conditions imposed and return the convicted person to a correctional institution."

which he stood convicted.[4] After a trial, the habeas court, applying the standard for proving actual innocence articulated by Justice White in his concurring opinion in *Herrera* v. *Collins*, 506 U.S. 390, 429, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993) (based on newly discovered evidence and entire record of original trial, no rational trier of fact could find proof beyond reasonable doubt), found that "a rational trier of fact could find proof of the petitioner's guilt beyond a reasonable doubt." Thus, although the habeas court referred to the "newly discovered evidence" requirement, it did not employ that requirement in rejecting the petitioner's claim. Instead, the court addressed the claim of actual innocence and rejected the claim on its merits.

After a grant of certification to appeal to the Appellate Court; see General Statutes § 52-470 (b);[5] the petitioner appealed to that court. The Appellate Court, however, did not address the petitioner's claim regarding his actual innocence. Instead, relying on that court's decision in *Williams* v. *Commissioner of Correction*, 41 Conn. App. 515, 677 A.2d 1, appeal dismissed, 240 Conn. 547, 692 A.2d 1231 (1997), the Appellate Court determined that the evidence on which the petitioner relied for that claim was not "newly discovered," within the

---

[4] The petitioner also claimed ineffective assistance of counsel. The habeas court rejected that claim on its merits, and that question is not before us in this appeal.

[5] General Statutes § 52-470 provides: "(a) The court or judge hearing any habeas corpus shall proceed in a summary way to determine the facts and issues of the case, by hearing the testimony and arguments therein, and inquire fully into the cause of imprisonment, and shall thereupon dispose of the case as law and justice require.

"(b) No appeal from the judgment rendered in a habeas corpus proceeding brought in order to obtain his release by or in behalf of one who has been convicted of crime may be taken unless the appellant, within ten days after the case is decided, petitions the judge before whom the case was tried or a judge of the Supreme Court or Appellate Court to certify that a question is involved in the decision which ought to be reviewed by the court having jurisdiction and the judge so certifies."

meaning of that phrase in habeas corpus parlance, and affirmed the judgment of the habeas court on that basis. *Clarke* v. *Commissioner of Correction*, supra, 43 Conn. App. 384. Thus, the Appellate Court did not review the merits of the petitioner's actual innocence claim. This certified appeal followed.

In *Summerville* v. *Warden*, 229 Conn. 397, 422, 641 A.2d 1356 (1994), this court held for the first time that "a substantial claim of actual innocence is cognizable by way of a petition for a writ of habeas corpus, even in the absence of proof by the petitioner of an antecedent constitutional violation that affected the result of his criminal trial." Such a claim is known as a freestanding claim of actual innocence. *Miller* v. *Commissioner of Correction*, 242 Conn. 745, 788 n.28, 700 A.2d 1108 (1997). In *Summerville*, however, it was not necessary for us to reach the question of "the legal standard [of persuasion] that must be met by a habeas corpus petitioner claiming actual innocence in order to gain a new trial at which his guilt or innocence will again be determined . . . ." *Summerville* v. *Warden*, supra, 432.

Thereafter, in *Miller* v. *Commissioner of Correction*, supra, 242 Conn. 745, we resolved the question that we had left unanswered in *Summerville*. We held "that the proper standard for evaluating a freestanding claim of actual innocence, like that of the petitioner, is twofold. First, the petitioner must establish by clear and convincing evidence that, taking into account all of the evidence—both the evidence adduced at the original criminal trial and the evidence adduced at the habeas corpus trial—he is actually innocent of the crime of which he stands convicted. Second, the petitioner must also establish that, after considering all of that evidence and the inferences drawn therefrom as the habeas court did, no reasonable fact finder would find the petitioner guilty of the crime." Id., 747.

In so holding, however, "we assume[d] without deciding that the petitioner's claim must be based on 'new evidence,' that is, evidence that is not cumulative, was not available to the petitioner at his criminal trial, and could not have been discovered by him at that time through due diligence. See *Summerville* v. *Warden*, supra, 229 Conn. 426." *Miller* v. *Commissioner of Correction*, supra, 242 Conn. 789 n.29. We engaged in that assumption for three explicitly stated reasons: "(1) the habeas court applied that requirement to the petitioner in [that] case, and determined that the petitioner's evidence met that requirement; (2) the petitioner agreed that this should be one of the components of his burden; and (3) the parties [did] not dispute that the petitioner's evidence *is* newly discovered." (Emphasis in original.) Id., 789–90 n.29.[6]

The certified question in the present case is very important—to habeas corpus petitioners, to the state as the respondent to such petitions, and to the judicial system in general. Our final answer will have serious implications for all three groups. Furthermore, it is a very difficult question, with powerful and appealing arguments on both sides.

When faced with a question of this magnitude and difficulty, a court performs its function best when it is presented with a concrete factual situation that compels it to focus on those facts and the rule of law that applies to them because the outcome of the case is likely to depend on the answer to the question. To be sure, there are times when we have considered questions that did

---

[6] We also noted that, although we recently had certified for appeal the specific question of whether a freestanding claim of actual innocence was required to be based on new evidence; see *Williams* v. *Commissioner of Correction*, 240 Conn. 547, 548, 692 A.2d 1231 (1997); we subsequently dismissed that appeal as improvidently granted because the petitioner in that case ultimately agreed with the "new evidence" requirement. *Miller* v. *Commissioner of Correction*, supra, 242 Conn. 789–90 n.29.

not absolutely need to be answered by the facts of the case at hand. Undoubtedly, there will be others as well. When, however, we realize that we are confronted with a case involving a legal question of the order of magnitude of the nature of the evidence that the law requires a habeas corpus petitioner to produce in order to prove his actual innocence, prudence strongly suggests that, if possible, we postpone our determination until we are presented with facts that squarely and necessarily require us to address the question. We are more likely to answer the question soundly when the *actual outcome* of the case is likely to depend on the answer to the legal question. This is not such a case.

The habeas court rejected the claim of actual innocence on its merits. The Appellate Court did not review that determination. Thus, there is as yet no adjudication in this case suggesting that there is a substantial basis for the petitioner's claim of actual innocence. Moreover, our review of the record does not suggest that, independent of any such adjudication, there is such a substantial basis in this case.[7] It would, therefore, be prudent for us to await a case in which there is a substantial basis for the claim of actual innocence. When and if we are presented with such a case, we will undertake to decide the question of the "new evidence" requirement in that context because that will give us a compelling context in which to resolve the question. Therefore, we conclude that this appeal should be dismissed on the ground that certification to appeal was improvidently granted.

We reiterate that, as we indicated in *Miller* v. *Commissioner of Correction*, supra, 242 Conn. 789–90 n.29,

---

[7] In this connection, we thoroughly have reviewed: (1) the entire transcript of the habeas corpus hearing; (2) the entire transcript of the petitioner's criminal trial, which he introduced as an exhibit in the habeas hearing; (3) the habeas court's memorandum of decision; (4) the briefs filed in the Appellate Court; and (5) the opinion of the Appellate Court.

we have not decided whether a habeas petitioner's claim of actual innocence must be based on new evidence, and that, therefore, it should be regarded as an open question in our habeas jurisprudence. We also reiterate that, just as a denial by us of certification to appeal from a judgment of the Appellate Court in any given case should not be understood as either approval or disapproval of the opinion of that court; *State* v. *Doscher*, 172 Conn. 592, 376 A.2d 359 (1977); similarly, a dismissal of a certified appeal on the ground that certification was improvidently granted should not be understood as either approval or disapproval of the decision from which certification to appeal was originally granted.

The appeal is dismissed.

In this opinion NORCOTT and KATZ, Js., concurred.

BERDON, J., dissenting. The majority of this court refuses to answer the question that we certified for our review: whether "a habeas corpus petitioner alleging his innocence must show that his claim of innocence is sustained by newly discovered evidence?" *Clarke* v. *Commissioner of Correction*, 239 Conn. 945, 686 A.2d 120 (1996). In my view, the heritage and purpose of the writ of habeas corpus compel us to answer this question in the negative. Although my colleagues in the majority claim that they have not reached this issue, in fact they have decided to send the following, unmistakable message to trial courts: refuse to hear a habeas petitioner's claim that he is actually innocent unless he proffers evidence that satisfies two criteria: (1) it is newly discovered; and (2) it "could not have been discovered earlier by the exercise of due diligence." (Internal quotation marks omitted.) *Clarke* v. *Commissioner of Correction*, 43 Conn. App. 374, 379, 682 A.2d 618 (1996). My colleagues have managed to send this message by the simple expedient of declining to displace the Appellate

Court's decision in this case, which adds another precedent to the habeas jurisprudence that the Appellate Court began in *Williams* v. *Commissioner of Correction*, 41 Conn. App. 515, 527, 677 A.2d 1 (1996), appeal dismissed, 240 Conn. 547, 692 A.2d 1231 (1997).

The majority is technically accurate to claim that it has not decided the issue that we certified. As a practical matter, however, this claim is entirely incorrect. By leaving the Appellate Court's decisions in *Clarke* and *Williams* in place, the habeas trial courts will be required to employ the standard that the Appellate Court has set forth.[1] In this manner, the majority is spared the effort of justifying its decision. Quite simply, I agree with Justice McDonald's dissent that "the freedom of those who are actually innocent and wrongly incarcerated" requires us to answer the question that we certified.[2]

If there are "powerful and appealing arguments" in support of the regime created by the Appellate Court—as the majority claims that there are—I cannot imagine what they might be. It is apparent to me that we must permit a habeas petitioner an opportunity to be heard

---

[1] This is not the first time that the majority has employed this tactic. In *Summerville* v. *Warden*, 229 Conn. 397, 641 A.2d 1356 (1994), the majority technically did not render a definitive holding. Nevertheless, the court functionally issued the following instruction to trial courts: "[A] habeas petitioner claiming actual innocence would have to make a truly persuasive demonstration of actual innocence . . . the threshold showing . . . [is] extraordinarily high." (Internal quotation marks omitted.) Id., 442 (*Berdon, J.,* dissenting). Just three years later, the court expressly held that the "habeas court first must be convinced by clear and convincing evidence that the petitioner is actually innocent"; *Miller* v. *Commissioner of Correction*, 242 Conn. 745, 794, 700 A.2d 1108 (1997); and then must determine that no reasonable fact finder would have found him guilty. Id., 800. It is far from alarmist to fear that the majority will soon enshrine its decision today in an express holding.

[2] Even if the majority were to one day reject the Appellate Court's current jurisprudence, innocent people could well remain incarcerated for years before that day comes.

when there exists material evidence that he is innocent, no matter when the evidence was discovered or whether it could have been discovered earlier by the exercise of due diligence. A liberal and nontechnical standard is required in order to protect against "the injustice that results from the conviction of an innocent person [a concern that] has long been at the core of our criminal justice system. That concern is reflected, for example, in the 'fundamental value determination of our society that it is far worse to convict an innocent man than to let a guilty man go free.' *In re Winship*, 397 U.S. 358, 372 [90 S. Ct. 1068, 25 L. Ed. 2d 368] (1970) (Harlan, J., concurring). See also T. Starkie, Evidence 756 (1824) ('The maxim of the law is . . . that it is better that ninety-nine . . . offenders should escape, than that one innocent man should be condemned'). See generally Newman, Beyond 'Reasonable Doubt,' 68 N.Y.U. L. Rev. 979, 980–981 (1993)." *Schlup* v. *Delo*, 513 U.S. 298, 325, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995).

The majority is unable to articulate any of the allegedly "powerful and appealing arguments" that cut in favor of denying an innocent man his right to rely upon the Great Writ. Nevertheless, it is clear to me that the majority is perfectly content with the Appellate Court's decisions in *Clarke* and *Williams*. This is the only possible explanation for the majority's refusal to address the question that we certified.

The Appelate Court's rule will have a devastating impact upon innocent defendants, particularly if they are poor. It is one of the grave inequities of our system of criminal justice that acquittal comes with a price tag that many defendants cannot afford. Our public defenders labor under Sisyphean caseloads; it is often not humanly possible for them to exercise what a court may—with the benefit of hindsight—elect to characterize as "due diligence." As a result, there exists the harrowing possibility that a demonstrably innocent person will be incarcerated or even executed.

The regime created by the Appellate Court and endorsed by the majority of this court tolerates the following sequence of events. A citizen is accused of committing a capital offense. Exculpatory evidence exists that—if brought to light—would conclusively demonstrate that the defendant is an innocent man unjustly accused. The public defender fails to discover this evidence. The defendant is convicted and receives a capital sentence. Eventually, the habeas court considers the exculpatory evidence, and is persuaded by it. Nevertheless, the court cannot grant the writ, because the exculpatory evidence could have been discovered earlier by the exercise of due diligence. Because of a blunder by counsel, the defendant—an innocent man—is executed for a crime that he did not commit, even though the habeas court believed that he was innocent.

The Appellate Court's jurisprudence is simply outrageous. It flays the flesh from the Great Writ, and ignores its fundamental purpose: to insure that justice is done. "The very nature of the writ demands that it be administered with the initiative and flexibility to insure that miscarriages of justice within its reach are surfaced and corrected. . . . Courts ought not to suffocate the writ in stifling formalisms or hobble its effectiveness with the manacles of arcane and scholastic procedural requirements." (Citation omitted; internal quotation marks omitted.) *Valeriano* v. *Bronson*, 209 Conn. 75, 97, 546 A.2d 1380 (1988) (*Shea, J.,* concurring). As previously discussed, "[a] democratic society such as ours . . . has an important interest in assuring that innocent persons are not put to death or deprived of their liberty. That assurance is, quite simply, what the writ of habeas corpus is all about. The Great Writ cuts through all forms and goes to the very tissue of the structure. It comes in from the outside, not in subordination to the proceedings, and although every form may have been preserved opens the inquiry whether they have been

more than an empty shell. *Frank* v. *Mangum*, 237 U.S. 309, 346, 35 S. Ct. 582, 59 L. Ed. 969 (1915) (Holmes, J., dissenting). In *Bunkley* v. *Commissioner of Correction*, 222 Conn. 444, 460–61, 610 A.2d 598 (1992), this court held that the writ is to serve as a bulwark against convictions that violate fundamental fairness or involve a miscarriage of justice. . . . Today's decision reduces this great bulwark to a sieve." (Internal quotation marks omitted.) *Summerville* v. *Warden*, 229 Conn. 397, 443, 641 A.2d 1356 (1994) (*Berdon, J.*, dissenting).

Yet again, the majority continues its assault on the writ of habeas corpus. I cannot say that this comes as a surprise. As I pointed out in my concurring and dissenting opinion in *Miller* v. *Commissioner of Correction*, 242 Conn. 745, 810–12, 700 A.2d 1108 (1997): "The court's decision today signals the continued evisceration of the writ of habeas corpus, the 'Great Writ' of liberty. Indeed, since the time that I expressed 'my concern on the direction of the majority with regard to the future of the great protector of liberty—the writ of habeas corpus'; *Safford* v. *Warden*, 223 Conn. 180, 205, 612 A.2d 1161 (1992) (*Berdon, J.*, concurring); this court's jurisprudence has consistently undermined the Great Writ. See *Summerville* v. *Warden*, supra, 229 Conn. 431 (rejecting standard of proof in habeas proceedings that, 'considering the evidence and claims now brought before [the habeas court], together with the evidence produced at the original trial, there is a *probability* of a different result' . . .); *Carpenter* v. *Meachum*, 229 Conn. 193, 202, 640 A.2d 591 (1994) (holding that General Statutes § 52-273, which deprives this court of subject matter jurisdiction over writ of error brought to review denial of habeas petition after habeas court has denied certification to appeal, is not unconstitutional); *Simms* v. *Warden*, 229 Conn. 178, 181–85, 640 A.2d 601 (1994) (holding that this court does not have subject matter jurisdiction over writ of error brought to

review denial of petition of habeas corpus after habeas court has denied certification to appeal); *Jackson* v. *Commissioner of Correction*, 227 Conn. 124, 131–35, 629 A.2d 413 (1993) (holding that in order for habeas petitioner to be entitled to review of claim not raised on direct appeal, he must show that some objective factor external to defense caused procedural default and that default was prejudicial, thereby abandoning former rule that procedurally defaulted claims were reviewable in habeas proceedings so long as petitioner had not deliberately bypassed his right to review of these claims); *Bunkley* v. *Commissioner of Correction*, [supra, 222 Conn. 454] (holding that in order to prevail on claim of ineffective assistance of appellate counsel, habeas petitioner must show not only that his appeal would have been sustained but for counsel's deficient performance, but also that there is reasonable probability that trial verdict would have been different); *Johnson* v. *Commissioner of Correction*, 218 Conn. 403, 411–19, 589 A.2d 1214 (1991) (abandoning 'deliberate bypass' standard in favor of 'cause and prejudice' standard for claims not raised at trial). Because the right to petition for a writ of habeas corpus is protected by our state constitution; see Conn. Const., art. I, § 12; the majority does indirectly what it could not do directly. In other words, instead of a direct assault, the majority cripples the Great Writ's effectiveness so that, as a result, it is nothing more than a paper tiger." (Emphasis in original.)

Unlike my colleagues in the majority, Chief Justice William Rehnquist would hold that our state constitution requires a liberal and expansive habeas jurisprudence. "Chief Justice Rehnquist [has] explained [that] . . . the federal courts are limited by federalism concerns and by the traditional deference paid to the states in matters of criminal process. [*Herrera* v. *Collins*, 506 U.S. 390, 400–402, 407, 113 S. Ct. 853, 122 L. Ed. 2d 203

(1993)]. Therefore, a claim of actual innocence based on newly discovered evidence is not a ground for federal habeas relief 'absent an independent constitutional violation occurring in the underlying state criminal proceeding'; id., 400; because '*[f]ederal* courts are not forums in which to relitigate *state* trials.' . . . Id., 401. According to Chief Justice Rehnquist, the federal courts do not have jurisdiction to grant habeas relief for a claim of actual innocence unless the evidence of innocence is so overwhelming that it would be unconstitutional not to grant the petitioner a new trial. Id., 417. State courts face no such limitation." (Emphasis in original.) *Summerville* v. *Warden,* supra, 229 Conn. 442 (*Berdon, J.,* dissenting).

I recognize that granting a new trial to a petitioner who previously has been convicted may impose substantial costs on society. Memories fade, and witnesses become unavailable, leaving the state with a burden that is not inconsiderable. But these costs must be viewed through the following lens: a petitioner can obtain an order for a new trial only if he persuades the habeas court that he is innocent. Furthermore, our "concern about the injustice that results from the conviction of an innocent person has long been the core of our criminal justice system." *Schlup* v. *Delo,* supra, 513 U.S. 325. The writ—which is protected by both our state constitution and the United States constitution[3]—"furnishes the strongest security for the liberty of the citizen, and constitutes the most prominent distinction between a free and absolute government." 1 Z. Swift, A Digest of the Laws of the State of Connecticut (1822) p. 568. Unfortunately, the majority burdens the writ of liberty

---

[3] "Of course both the constitution of Connecticut and the constitution of the United States . . . contain guarantees . . . the effect of which [are] that any person may at any time bring the writ claiming an illegal confinement." (Internal quotation marks omitted.) *Iovieno* v. *Commissioner of Correction,* 222 Conn. 254, 260, 608 A.2d 1174 (1992), overruled in part on other grounds, 242 Conn. 689, 699 A.2d 1003 (1997).

with heavy procedural sandbags, thus undermining its effectiveness and jeopardizing the liberty of us all.

The majority of this court does not share my vision that a robust jurisprudence of the writ of habeas corpus is necessary to prevent the gravest injustice known to modern law. I can only conclude that my colleagues are less disturbed than I am by the specter of an innocent person being deprived of his liberty or put to death.

Accordingly, I dissent.

MCDONALD, J., dissenting. I do not agree that we may avoid answering the question whether a claim of actual innocence under *Miller* v. *Commissioner of Correction*, 242 Conn. 745, 700 A.2d 1108 (1997), must be supported by newly discovered evidence simply because the petitioner's claim of actual innocence does not appear to be "substantial."

I believe that the freedom of those who are actually innocent and wrongly incarcerated and the public safety require us to answer this question now.

Accordingly, I respectfully dissent from the majority's dismissal of the petitioner's appeal on the ground that certification was improvidently granted.