[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner was the defendant in State of Connecticut v. EdwardParker, docket number CR98-0174658 originally brought in the Superior Court for the Judicial District of Hartford. He was charged with murder in violation of § 53a-54a (a) of the General Statutes, criminal use of a firearm in violation of § 53a-216 of the General Statutes, and carrying a pistol without a permit in violation of § 29-35 of the General Statutes. The case was eventually transferred to the newly created New Britain Judicial District. CT Page 1311
On July 20, 1999, the petitioner entered a guilty plea under theAlford doctrine to the murder charge. The plea was entered based on a plea agreement which called for a sentence of thirty years incarceration. On October 14, 1999, pursuant to the plea agreement, the petitioner was sentenced to a term of thirty years incarceration by the Court (lannotti, J.), and he is presently in the custody of the Commissioner of Corrections pursuant to said sentence. The petitioner was represented at trial by Attorney Stephen Gionfriddo.
The petitioner, by counsel, has filed a third amended two count petition seeking a writ of habeas corpus. The first count alleges ineffective assistance of trial counsel. The second count make a claim of actual innocence.
A hearing was held on the petition by this court on October 10, 2002. The witnesses were the petitioner, Mr. Gionfriddo and the petitioner's mother, Rosa Parker. In addition, forty-six documentary exhibits were put in evidence.
 I
The claim in the first count of ineffective assistance of counsel is based on several grounds. These are that counsel did not adequately advise the petitioner concerning his option to plead guilty or proceed to trial, that counsel did not adequately advise the petitioner concerning CT Page 1312 the consequences of his plea, that counsel failed to ensure that the plea was made knowingly, voluntarily and intelligently, and that counsel did not adequately advise the petitioner concerning the elements of murder. It is also claimed that counsel did not conduct a sufficient investigation into potential defenses, in particular whether any of the affirmative defenses under General Statutes § 53a-54c and General Statutes § 53a-8 were available to the petitioner. It is further claimed that counsel did not conduct a sufficient investigation into the elements of the prosecution's proof or the petitioner's case, and that counsel did not conduct a sufficient investigation by not speaking to certain witnesses.
 "A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. Strickland v. Washington, supra, 466 U.S. 686. This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . Pretrial negotiations implicating the decision of whether to plead guilty is a critical stage in criminal proceedings . . . and plea bargaining is an integral component of the criminal justice system. . . ." (Internal quotation marks omitted.) Crump v. Commissioner of Correction, supra, 61 Conn. App. 58-59.
"In order . . . to prevail on a constitutional claim of ineffective assistance of counsel, [the Petitioner] must establish both (1) deficient performance, and (2) actual prejudice. Bunkley v. Commissioner of Correction, 222 Conn. 444, 445, 610 A.2d 598 (1992); Daniel v. Commissioner of Correction, [57 Conn. App. 651, 664, 751 A.2d 398, cert. denied, 254 Conn. 918, 759 A.2d 1024 (2000)]. Thus, he must establish not only that his counsel's performance was deficient, but that as a result thereof he suffered actual prejudice, namely, that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, supra, 466 U.S. 694." (Internal quotation marks omitted.) Crump v. Commissioner of Correction, supra, 61 Conn. App. 59. With regard to claims arising from the plea negotiation process, the Petitioner must "show that there is a reasonable probability that, but for CT Page 1313 counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (Internal quotation marks omitted.) Id., quoting Hill v. Lockhart, 474 U.S. 52, 57-58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Because both prongs of the Strickland test must be established for a habeas Petitioner to prevail, a court may dismiss a Petitioner's claim if he fails to meet either prong Denby v. Commissioner of Correction, 66 Conn. App. 809, 813, 786 A.2d 442 (2001), cert. denied, 259 Conn. 908, 789 A.2d 994 (2002).
King v. Commissioner of Correction, 73 Conn. App. 600, 602 (2002)
The court finds that the following facts have been proven. On September 15, 1995, the body of Omar Honore was found alongside a road in Berlin, Connecticut. Honore was the victim of a homicide, having been shot twice in the left side of his head. He had been shot somewhere else and his body was dumped on the side of the road. Honore was actively involved in narcotics dealing in the New Britain and Hartford area.
On September 20, 1995, the State Police received an anonymous telephone call from a woman who said that the petitioner had killed Honore, and gave various details of the killing. The police located the petitioner and he agreed to be interviewed. The petitioner told the police that he did not know Honore and had never met him. He also said that he had not loaned his car to anyone on September 14 or 15, 1995. He gave the police permission to inspect his car. The police removed various pieces of material and blood-like stains from the petitioner's car.
On January 3, 1997, the petitioner again told the police that he was not involved in the Honore shooting. He also told the police that he believed he was being accused of the killing because he was a "stick up guy" who robbed drug dealers for drugs and money.
On October 23, 1997, Donzie Taylor gave a statement, under oath and in the presence of his attorney, that in mid 1995 the petitioner came to his house about midnight and told Taylor that he had shot the person he had one week earlier talked about robbing. Taylor saw blood on the petitioner's clothes and hand, and in the petitioner's car. Taylor claimed that the petitioner demonstrated how he shot the victim in the left side of the head and showed Taylor the gun. Taylor also stated that a week or so later the petitioner was bragging about shooting the man found in Berlin. This occurred at a gathering where several other people were present. CT Page 1314
On October 28, 1997, the police told the petitioner that Honore's blood had been found in his car. The petitioner then claimed that sometime before the police searched his car on September 20, 1995 he had loaned his car to his friend Donzie Taylor so that Taylor could pick up his girlfriend, and that Taylor had his car from 5:00 P.M. until between 9:30 and 10:00 P.M.
On November 25, 1997, the petitioner gave a signed statement to the police in which he claimed that five or six days before his car was searched he loaned his car to Taylor so that Taylor and Fabian Hoyte could rob a New Britain drug dealer. Taylor gave the petitioner $50 and had the car from 7:00 P.M. until approximately 11:00 P.M. When he returned the car he gave the petitioner two ounces of crack cocaine.
On March 11, 1998, the petitioner was arrested and charged with the murder of Honore. On March 18, 1998, the petitioner gave a statement to the police with his then attorney, Jake Donovan, present. In this statement he said that on the night of the killing he and Hoyte met with Honore to buy drugs and that while riding in the car Hoyte shot Honore. He said that he was driving, Honore was in the front passenger seat, and when Honore showed them the cocaine, Hoyte shot him twice in the head. The petitioner stated that he did not know that Hoyte was going to shoot the victim. Hoyte then made the petitioner help dump the body. The petitioner then told Taylor about the murder a couple of hours later and led Taylor to believe that he had shot Honore.
On December 25 and 27, 1998, the petitioner wrote two letters to his attorney, Mr. Gionfriddo, in which he stated that all he had done was to loan his car to Taylor for $50.
On July 3, 1999, the petitioner sent a letter to Scott Murphy, State's Attorney for the Judicial District of New Britain. In this letter the petitioner stated that the statement he gave on March 18, 1998, wherein he claimed that he was present in the car when Honore was shot, was not true. The letter stated that the previous version he gave about loaning his car to Taylor and Hoyte so they could rob a drug dealer was the truth.
Attorney Gionfriddo has been engaged in the general practice of law, including criminal defense work, since 1975. He has tried approximately twelve criminal cases to conclusion, the most serious being a robbery case. He had represented the petitioner on previous occasions in several criminal cases, all of which were concluded without trials and with very favorable dispositions. In this case he was contacted by the petitioner's CT Page 1315 mother in March, 1998 and asked to represent her son, who had been arrested and charged with murder. Financial terms were agreed upon with Mrs. Parker, and he filed his appearance on April 20, 1998. By the time Mr. Gionfriddo entered the case, the petitioner had already given the various contradictory statements earlier referred to.
Mr. Gionfriddo met with the petitioner on many occasions and discussed the case in detail. It was the petitioners claim that he had loaned his car to Taylor and Hoyte and they probably had committed the crime. He also claimed that he had an alibi because he was with his girlfriend and her mother when the crime was committed. Mr. Gionfriddo interviewed the girlfriend and her mother at his office in connection with their alibi evidence and also examined the state's attorney's file, and concluded that the alibi evidence would not be persuasive, and so advised the petitioner. Mr. Gionfriddo also attempted to interview Donzie Taylor, who had given the statement which was highly incriminatory with respect to the petitioner, but Taylor was not willing to speak to him. Mr. Gionfriddo was unable to interview Hoyte because he was no longer in the country. At Mr. Gionfriddo's suggestion, Mrs. Parker hired a private investigator, who Mr. Gionfriddo spoke to on several occasions and suggested he try and interview Taylor and Hoyte. The investigator eventually advised Mr. Gionfriddo that he was unable to come up with any exculpatory information. Mr. Gionfriddo had complete access to the state's attorney's file, made notes with respect to various documents, and copies of what documents he felt he needed. Mr. Gionfriddo met with the petitioner twice in the correctional center and a number of times at the courthouse and discussed in detail the state's evidence and any defenses he might have.
The case was extensively pretried. During the pretrials the petitioner's position continued to be that he had loaned his car to Taylor and Hoyte on the night of the murder. Eventually Judge Frank lannotti offered a sentence of twenty-five years incarceration on a plea of guilty to murder. The petitioner rejected the offer and it was withdrawn by Judge lannotti. A trial date was set and Mr. Gionfriddo was prepared for trial. Mr. Gionfriddo met with the petitioner the day before trial was scheduled to start and again reviewed the state's case. Mr. Gionfriddo had spoken earlier to the petitioner's girlfriend about she and her mother testifying at the trial. The mother had called back and said that she and her daughter did not wish to be involved or testify in the case. He advised the petitioner that in view of his many contradictory statements that he felt he would be a poor witness. He then attempted to do a mock cross examination so the petitioner would understand what would happen when he took the witness stand. At this point the petitioner asked Mr. Gionfriddo which story he would be better off to tell. Mr. Gionfriddo CT Page 1316 told him he should tell the truth. Mr. Gionfriddo told the petitioner that, based on the blood evidence in his car, the testimony expected to be given by Taylor, the fact that the alibi claim was not viable, and the many contradictory statements given by the petitioner, that it was his opinion that if the case were tried he would probably be found guilty. He also advised the petitioner that if he were convicted he was exposed to a sentence of sixty years on the murder charge. After extensive discussions the petitioner agreed to plead guilty. The petitioner was aware that Judge lannotti had said that the earlier offer of twenty-five years was no longer available, but Mr. Gionfriddo hoped that it would be reinstated, and he so advised the petitioner.
The following day, July 20, 1999, Mr. Gionfriddo was told by Judge lannotti that the previous offer of twenty-five years was no longer available and that he would impose a sentence of thirty years if the defendant pleaded guilty to murder. Mr. Gionfriddo immediately told the petitioner what the sentence would be. They then discussed the case and Mr. Gionfriddo advised the petitioner that it was his opinion that the sentence after a guilty verdict would exceed thirty years and he recommended the petitioner plead guilty. Mr. Gionfriddo was prepared to start picking the jury that day, the jurors were available, and the petitioner elected to plead guilty to murder. Judge lannotti fully canvassed the petitioner with respect to his plea of guilty and found him guilty of murder. The validity of the plea and finding of guilty were upheld on appeal. State v. Parker, 67 Conn. App. 351.
At the habeas trial the petitioner testified about the killing of Honore. His version was essentially in accord with what he told the police on March 18, 1998. He testified that all of his other statements to the police and his letters to his attorney and the state's attorney were lies. He testified that he was driving his car with Honore in the front seat, and Hoyte in the back seat, when Hoyte suddenly shot Honore. He claimed that he and Hoyte were buying drugs from Honore and that he had no knowledge that Hoyte was going to shoot Honore.
With respect to the claim of ineffective assistance of counsel he testified that Mr. Gionfriddo only met with him once or twice and that they never discussed the facts of the case. He claimed that Mr. Gionfriddo never told him about the offer of twenty-five years and never discussed any defense strategy. These and other of the petitioner's various claims about the alleged inadequacies of his representation by Mr. Gionfriddo were substantially rebutted by his answers to Judge lannotti at the time of the plea canvass. In addition, during cross examination the petitioner admitted that the answers he gave at the pleas canvass were true. It is apparent that throughout the representation, the CT Page 1317 petitioner was less than truthful to his attorney, who he now claims was ineffective. The court is of the opinion that the petitioner will say whatever he feels will be of benefit to him, whether or not it is the truth. He is not a credible witness. The court accepts Mr. Gionfriddo's testimony as factually accurate and credible.
In his post trial brief the petitioner asserts that "the crux of the petitioner's claim of ineffective assistance of counsel is that Attorney Stephen Gionfriddo failed to communicate with the petitioner regarding his case, failed to adequately investigate potential defenses available to the petitioner and failed to properly assess the strength of the State's case prior to advising the petitioner to plead guilty to Murder."
Mr. Gionfriddo's testimony, which the court accepts as factually accurate, clearly shows that he did communicate with the petitioner regarding the case, and adequately investigated and advised the petitioner with respect to potential defenses as best he could in view of the fact that his client continued to lie about his involvement in the murder. He had access to the entire state's file, knew what the evidence would be, and it was his opinion that the defendant would probably be convicted of murder if he went to trial. Faced with the probability of a finding of guilty after trial, with an exposure of sixty years, it was Attorney Gionfriddo's recommendation that the petitioner enter a plea of guilty in exchange for a sentence of thirty years. This was a reasonable and appropriate recommendation under all the circumstances and his client wisely accepted the advice.
The petitioner has failed to prove that his counsel's representation was deficient in any of the ways claimed. In addition he has failed to prove actual prejudice as a result of the alleged deficiencies.
 II
The second count of the petition makes a claim of actual innocence. It is alleged that the petitioner is actually innocent of the crime of murder in that he did not shoot the victim, that at the time of the shooting the petitioner had no knowledge that the victim would be shot, and that the petitioner did not have the requisite mental state to be convicted of the murder, either as a principal or an accessory.
The standard of proof in a habeas action where the petitioner presents a claim of actual innocence is well established in Connecticut jurisprudence. "[T]he proper standard for evaluating a freestanding claim of actual innocence . . . is twofold. First, the petitioner must CT Page 1318 establish by clear and convincing evidence that, taking into account all of the evidence-both the evidence adduced at the original criminal trial and the evidence adduced at the habeas corpus trial-he is actually innocent of the crime of which he stands convicted. Second, the petitioner must also establish that, after considering all of that evidence and the inferences drawn therefrom . . . no reasonable fact finder would find the petitioner guilty of the crime." Miller v.Commissioner of Correction, 242 Conn. 745, 747, 700 A.2d 1108 (1997); accord Clarke v. Commissioner of Correction, 249 Conn. 350, 355,732 A.2d 754 (1999). The Supreme Court has "not decided whether a habeas petitioner's claim of actual innocence must be based on new evidence, and . . . therefore, [that issue] should be regarded as an open question in our habeas jurisprudence." Clarke v. Commissioner of Correction, supra, 358.
In this case, since the petitioner pleaded guilty, there was no criminal trial and thus no evidence adduced. However, in the habeas trial the court had before it much of the evidence that would have been produced if a criminal trial had taken place. This included the statement of facts made by the state's attorney at the time the guilty plea was entered along with the evidence which is the basis of the facts found in Part I of this opinion. It was the state's position that the petitioner was driving the car with the victim riding in the front seat and that the victim was shot by the defendant. The petitioner conceded that the state had sufficient evidence so that he probably would have been convicted if he had gone to trial.
The evidence at the habeas trial included the testimony of the petitioner in connection with the killing of Honore, as set forth in Part I. This version is contrary to what the petitioner told his attorney and what he said in the letter he wrote to the State's Attorney less than three weeks before he pleaded guilty.
In support of his claim of actual innocence the petitioner appears to rely on two affidavits submitted at the habeas hearing. One is from Torrey Woodberry, who is an inmate at Gates Correctional Center in Niantic, Connecticut, and is dated August 29, 2002. The other is dated October 8, 2002, and is from Bennie Gray, Jr., an inmate incarcerated at Cheshire, Connecticut, where the petitioner is also incarcerated. Both affidavits attack the credibility of Donzie Taylor by relating what Taylor allegedly told them about the murder and the petitioner's role in it.
Woodberry's affidavit stated, in part that in October 1997, while they were in custody and on the way to the New London courthouse, Taylor told CT Page 1319 him the details of the murder. Taylor allegedly said that he (Taylor), the petitioner, and two other men were in the car intending to rob one of the occupants of the car and steal his cocaine, and someone in the back seat held a gun to the victim's head and the gun went off. Taylor also allegedly said that neither he or the petitioner was the shooter, who was now in Jamaica, but since the police were trying to blame him, the only person he could blame was the petitioner. This affidavit is in conflict with the petitioner's testimony at the habeas trial where he did not include Taylor as being one of the occupants of the car. The affidavit also stated that Woodberry knew that the petitioner was locked up for a murder at the time of his conversation with Taylor. The petitioner was not arrested for the murder until March 11, 1998.
Gray's affidavit recites a conversation he allegedly had with Taylor in March, 2002, when they were imprisoned together. In this conversation Taylor allegedly related to Gray what the petitioner had said to him concerning the murder when the petitioner had come to Taylor's house. In part, Taylor allegedly said that the petitioner told him that he and Fab were in the car and Fab had shot the man. Taylor also said that he saw blood and brain fragment in the petitioner's car, that he helped clean the car, that he knew that Fab had a history of murder, and that he was upset because the petitioner had tried to implicate him. There was nothing in the affidavit concerning any effort on the part of Taylor to falsely accuse the petitioner of committing the murder.
The two affidavits attack the credibility of Taylor. The court finds that these two affidavits from incarcerated felons, one of which affidavit is inconsistent with the habeas testimony of the petitioner, and the habeas testimony of the petitioner, who the court finds not credible, is not sufficient to meet the high standard of proof that is needed to establish a claim of actual innocence.
Taking into consideration all of the evidence adduced at the habeas trial, the petitioner has failed to prove by clear and convincing evidence that he is actually innocent of the crime to which he pleaded guilty and was convicted. In addition, the petitioner has failed to prove that no reasonable fact finder would find him guilty of the crime.
The third amended petition for a writ of habeas corpus is denied.
______________________________ Hadden, Judge Trial Referee CT Page 1320