******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

APPENDIX

## EARL THOMPSON *v.* COMMISSIONER
## OF CORRECTION*

Superior Court, Judicial District of Tolland

File No. CV-12-4004330

Memorandum filed August 4, 2014

*Proceedings*

Memorandum of decision on petitioner's petition for writ of habeas corpus. *Petition denied.*

*W. Theodore Koch III*, for the petitioner.

*Lisamaria T. Proscino*, special deputy assistant state's attorney, and *Michael J. Proto*, assistant state's attorney, for the respondent.

*Opinion*

FUGER, J. The petitioner, Earl Thompson, inmate # 305523, alleges in his petition for a writ of habeas corpus, initially filed on August 31, 2011, and amended for the final time on June 10, 2014, that his confinement under the custody of the respondent, the Commissioner of Correction, is illegal. Specifically, the petitioner in the three count complaint alleges that: (1) he is actually innocent of the crimes of which he was convicted; (2) his trial defense counsel, Attorney Gerald Beaudoin, was ineffective in his representation of the petitioner at his criminal trial; and (3) that his appellate counsel, Attorney Beaudoin, was ineffective.

During the July 29, 2014 trial on the merits of this habeas petition, the court received testimony from the petitioner, his trial defense counsel, Attorney Beaudoin, Attorney John Walkley, inmate Stephen Nelson, and inmate Ian Wright. Finally, the court received various pieces of documentary evidence, including the petitioner's criminal trial transcript, into evidence.

## FINDINGS OF FACT

1. The petitioner was a defendant in a criminal case proceeding in the judicial district of Hartford under Docket No. CR-08-06918868T in which, after a trial to a jury on October 22, 2009, he was found guilty of robbery in the first degree in violation of General Statutes § 53a-134a (4), conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134a (4), as well as kidnapping in the first degree in violation of General Statutes §§ 53a-92 (a) (2) (B) and 53a-8.

2. These charges arose out of a home invasion that took place in Bloomfield on August 10, 2004.

3. The jury could reasonably find the following facts to be true. "At approximately 11:30 p.m. on August 10, 2004, Stephan Julian arrived at her home in Bloomfield. At that time, her son, Damien Gardner, resided with her but was not present that night. As Julian entered the house, she was confronted by a man with a gun. A second man, also armed with a gun, quickly emerged. Because the faces of both men were covered, Julian could not recognize them, but she was able to determine that they were both dark skinned with Jamaican accents. The men repeatedly asked Julian where money was located in the house and forced her to lie on the floor in a downstairs bathroom while they searched the house. The men periodically checked on Julian, and she could hear them going up and down the stairs of her home. At one point, she heard an upstairs toilet flush. Eventually, when Julian no longer heard the men in her home, she peeked out of the bathroom and saw that it was light outside. She exited the bathroom and called the police.

4. "Detective Eric Kovanda was primarily responsible for processing the crime scene. In addition to other forensic evidence, Kovanda collected two urine samples from the rim of the toilet located in one of the upstairs bathrooms. The DNA profile developed from the urine swabs did not match any in the existing offender databases. In 2006, two jailhouse informants identified the [petitioner] as a suspect, and, consequently, on February 11, 2008, the police collected a DNA sample from the [petitioner] for comparison to the DNA profile developed from the urine samples that had been collected from the crime scene.

5. "On February 28, 2008, Kovanda met with the [petitioner] to discuss the August 11, 2004 incident. The [petitioner] indicated that he knew Julian's son, Gardner, and that he had been at their house a week or a few days prior to August 11, 2004."[1]

6. The petitioner was sentenced by the court (*Dewey, J.*) to a prison term of twenty years on the charge of robbery in the first degree, twenty years to run concurrent on the conspiracy to commit robbery in the first degree, and twenty-five years, *to run consecutive* on the count of kidnapping in the first degree. The total effective sentence was a commitment to the custody of the respondent for forty-five years.

7. Additional facts will be discussed, as necessary, in subsequent portions of this decision.

### DISCUSSION

The petitioner now comes before this court seeking to have this court order that the petitioner's conviction be set aside and the matter returned to the docket for further proceedings. The petitioner's major argument is that his trial defense counsel was constitutionally deficient in his performance of duties and that therefore, the petitioner was deprived of the assistance of the competent counsel guaranteed to him by the sixth amendment to the United States constitution, thereby rendering his confinement by the respondent illegal. While there are other claims, the petitioner mounts his primary attack upon his trial defense counsel for his failure to file a motion for a finding of not guilty as to the charge of kidnapping.

It is important to understand that this instant proceeding is an action seeking the issuance of a writ of habeas corpus. This case is now in what is often termed the "court of last resort." A petition for a writ of habeas corpus is, therefore, an application for *extraordinary* judicial relief in which, contrary to the criminal trial court, the burden rests with the petitioner.[2]

Notwithstanding the arguments raised by counsel and the petitioner, the court disagrees with the position of the petitioner and will deny the petition for a writ of habeas corpus.

At the outset, one must understand that there is a critical difference between the legal status of a person who has been accused of a crime as opposed to one who has been convicted of a crime. While the person who has been accused of a crime is entitled to a presumption of his or her innocence, the petitioner in a habeas corpus petition is not. "It is undoubtedly true that '[a] person when first charged with a crime is entitled to a presumption of innocence, and may insist that his guilt be established beyond a reasonable doubt. *In re Winship*, 397 U.S. [358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970)].' *Herrera* v. *Collins*, 506 U.S. 390, [398, 113 S. Ct. 853], 122 L. Ed. 2d 203 (1993). . . . The presumption of innocence, however, does not outlast the judgment of conviction at trial." (Citations omitted.) *Summerville* v. *Warden*, 229 Conn. 397, 422–23, 641 A.2d 1356 (1994). Consequently, the burden of proving entitlement to the grant of a writ rests with the petitioner. "Thus, in the eyes of the law, [the] petitioner does not come before the Court as one who is innocent, [but, on the contrary, as] one who has been convicted by due process of law . . . ." (Internal quotation marks omitted.) Id., 423. The petitioner is not, therefore, in the role of a "defendant," but is instead, a "convict."

The writ of habeas corpus is an ancient and time-honored component of our Anglo-American jurisprudence. "We do well to bear in mind the extraordinary prestige of the Great Writ, habeas corpus ad subjiciendum, in Anglo-American jurisprudence: 'the most celebrated writ in the English law.' 3 Blackstone Commentaries 129. It is 'a writ antecedent to statute, and throwing its root deep into the genius of our common law. . . . It is perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement. It is of immemorial antiquity, an instance of its use occurring in the thirty-third year of Edward I.' "[3] (Emphasis omitted; footnote omitted.) *Fay* v. *Noia*, 372 U.S. 391, 399–400, 83 S. Ct. 822, 9 L. Ed. 2d 837 (1963). When the United States achieved independence from England, the writ made the transatlantic voyage and became embodied in our law as well. "Received into our own law in the colonial period, given explicit recognition in the Federal Constitution, Art. I, § 9, cl. 2, incorporated in the first grant of federal court jurisdiction, Act of September 24, 1789, c. 20, § 14, 1 Stat. 81–82, habeas corpus was early confirmed by Chief Justice John Marshall to be a 'great constitutional privilege.' *Ex parte Bollman and Swartwout*, 4 Cranch 75, 95." (Footnotes omitted.) *Fay* v. *Noia*, supra, 400.

Issuance of a writ of habeas corpus is a remedy whose "most basic traditions and purposes"; *O'Neal* v. *McAninch*, 513 U.S. 432, 443, 115 S. Ct. 992, 130 L. Ed. 2d 947 (1995); are to "avoid a grievous wrong—holding a

person in custody in violation of the [federal] constitution," and thereby to protect "individuals from unconstitutional convictions and helps to guarantee the integrity of the criminal process by assuring that trials are fundamentally fair." Id., 442. Moreover, when a court reviews a petition for habeas corpus, "it must decide whether the petitioner is in custody in violation of the Constitution or laws or treaties of the United States. . . . The court does not review a judgment, but the lawfulness of the petitioner's custody simpliciter." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Coleman* v. *Thompson*, 501 U.S. 722, 730, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991).[4] So, the writ of habeas corpus "has been for centuries esteemed the best and only sufficient defense of personal freedom . . . ." (Citation omitted; internal quotation marks omitted.) *Lonchar* v. *Thomas*, 517 U.S. 314, 324, 116 S. Ct. 1293, 134 L. Ed. 2d 440 (1996).

A criminal defendant, of course, has an absolute constitutional right to persist in a plea of not guilty, even in the face of what some might think to be seemingly insurmountable obstacles and overwhelming evidence. He or she has an absolute right to hold the government to its justifiably high burden of proof and take the matter to a jury of his or her peers. The constitution of the United States, the Bill of Rights, and the constitution of the state of Connecticut collectively guarantee the fundamental right of a person to plead not guilty and have his or her case decided before a jury of his or her peers. Our common law has interpreted these constitutional guarantees as requiring that the government seeking to deprive a person of freedom must first prove that person's guilt *beyond all reasonable doubt*.[5] Moreover, all criminal defendants are entitled to the representation of counsel. The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . and to have the assistance of counsel for his defense." The sixth amendment right of confrontation and right to counsel is made applicable to the states through the due process clause of the fourteenth amendment. See *Pointer* v. *Texas*, 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965), and *Gideon* v. *Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963), respectively. The sixth amendment right to counsel is necessarily the right to an effective counsel. Notwithstanding, our constitutions do not require that a criminal defendant receive *perfect* representation.

It is not, and never has been, for the trial defense counsel to make the decisions that a client must make. The defendant decides how to plead, whether to testify, whether to waive the right to trial by jury, etc. Nevertheless, effective representation by counsel is crucial. "Because a defendant often relies heavily on counsel's independent evaluation of the charges and defenses,

the 'right to effective assistance of counsel includes an adequate investigation of the case to determine facts relevant to the merits or to the punishment in the event of conviction.' *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 154, 662 A.2d 718 (1995)." *Baillargeon* v. *Commissioner of Correction*, 67 Conn. App. 716, 721, 789 A.2d 1046 (2002). Consequently, an attorney who fails to offer his or her client proper counsel at critical junctures in the trial may well be providing ineffective representation.

In order that a petitioner prevail in a claim of ineffective assistance of counsel, the proof must satisfy both prongs of the test set forth by the United States Supreme Court in *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), before the court can grant relief. Specifically, the petitioner must *first* show "that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., 687. If, and only if, the petitioner manages to get over the first hurdle, then the petitioner must clear the second obstacle by proving "that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id. In short, the petitioner must show both deficiency and prejudice. A failure to prove both, even though counsel's trial performance may have been substandard, will result in denial of the petition.

As already noted, a criminal defendant is entitled to the representation of trained and competent legal counsel. Notwithstanding, "[t]he Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight. See *Bell* v. *Cone*, 535 U.S. [685, 702, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002)]; *Kimmelman* v. *Morrison*, 477 U.S. 365, 382 [106 S. Ct. 2574, 91 L. Ed. 2d 305] (1986); *Strickland* v. *Washington*, [supra, 466 U.S. 689]; *United States* v. *Cronic*, 466 U.S. 648, 656 [104 S. Ct. 2039, 80 L. Ed. 2d 657] (1984)." *Yarborough* v. *Gentry*, 540 U.S. 1, 8, 124 S. Ct. 1, 157 L. Ed. 2d 1 (2003). "[T]o prove that his counsel's performance was deficient, the petitioner must demonstrate that trial counsel's representation fell below an objective standard of reasonableness. . . . Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Internal quotation marks omitted.) *Smith* v. *Commissioner of Correction*, 148

Conn. App. 517, 524, 85 A.3d 1199, cert. denied, 312 Conn. 901, 91 A.3d 908 (2014).

Trial in this court of a habeas petition is not an opportunity for a new counsel to attempt to relitigate a case in a different manner. A habeas court "may not indulge in hindsight to reconstruct the circumstances surrounding the challenged conduct, but must evaluate the acts or omissions from trial counsel's perspective at the time of the trial." *Beasley* v. *Commissioner of Correction*, 47 Conn. App. 253, 264, 704 A.2d 807 (1997), cert. denied, 243 Conn. 967, 707 A.2d 1267 (1998). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." (Internal quotation marks omitted.) *Henry* v. *Commissioner of Correction*, 60 Conn. App. 313, 317, 759 A.2d 118 (2000).

Turning now to the specific complaints of the petitioner and the specific deficiencies alleged in the complaint, this habeas court will find that there is no merit to any of the points raised by the petitioner.

The petitioner was charged with both kidnapping and the felony of robbery. It is axiomatic that at the time of the petitioner's criminal trial, "to commit a kidnapping in conjunction with another crime, a defendant must intend to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the crime." *State* v. *Salamon*, 287 Conn. 509, 542, 949 A.2d 1092 (2008). "[A] defendant may be convicted of both kidnapping and another substantive crime if, at any time prior to, during or after the commission of that other crime, the victim is moved or confined in a way that has independent criminal significance, that is, the victim was restrained to an extent exceeding that which was necessary to accomplish or complete the other crime. Whether the movement or confinement of the victim is merely incidental to and necessary for another crime will depend on the particular facts and circumstances of each case. *Consequently, when the evidence reasonably supports a finding that the restraint was not merely incidental to the commission of some other, separate crime, the ultimate factual determination must be made by the jury.* For purposes of making that determination, the jury should be instructed to consider the various relevant factors, including the nature and duration of the victim's movement or confinement by the defendant, whether that movement or confinement occurred during the commission of the separate offense, whether the restraint was inherent in the nature of the separate

offense, whether the restraint prevented the victim from summoning assistance, whether the restraint reduced the defendant's risk of detection and whether the restraint created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense." (Emphasis altered; footnote omitted.) Id., 547–48.

The petitioner's theory of defense at his trial was that he did not commit these crimes, which, given the inability of the victim to identify the perpetrators, was not an altogether bad decision. The petitioner complains in his habeas petition that his trial defense counsel was deficient in his performance by neither raising the *Salamon* defense in a motion for a finding of not guilty before the trial judge and by failing to make that argument to the jury. It is uncontested that the trial defense counsel did neither, and this court makes that specific finding of fact. It is also uncontested that in her instructions to the jury, the trial court correctly and clearly gave a proper *Salamon* instruction.[6] The issue having been submitted to the jury after having received appropriate instructions, of course, left the determination as to whether the restraint involved in this case was incidental to the robbery as a question of fact to be made by the jury.

Notwithstanding, the issue as to whether this factual determination should have been presented to the jury was not resolved at the petitioner's criminal trial. Trial defense counsel never moved for a finding of not guilty on the kidnapping charge on this basis, nor did he make such an argument to the jury. At the habeas trial, counsel clearly explained that he made the conscious decision not to do so because he did not want to lose credibility with the judge or the jury. Although it is clear that lawyers are free to make conflicting, mutually exclusive arguments to juries, there is the inherent risk that in so doing the credibility of a defense could suffer. In this case, the defense strategy was that the petitioner did not commit the crime. To make the argument to the jury, even though he was not the perpetrator, that the restraint involved in the case was merely incidental to the robbery was a risky strategy. Even though such an argument would be permissible, trial defense counsel was correct in believing that doing so could cause him to lose credibility with the jury and thereby harm the petitioner's case. Consequently, he made the strategic decision to eschew such an argument. This court cannot find that this strategic decision was unwarranted or unsound and, therefore, will not find that the failure on the part of trial defense counsel to do so was deficient performance.

The same finding cannot be made in regard to the decision not to move for a finding of not guilty with the trial judge before the case even went to the jury. This court will find it was deficient performance on the

part of trial defense counsel not to raise such a motion with the trial judge. The main distinction between raising the motion to the judge and making a similar argument to the jury is that the judge would be deciding the motion as a matter of law, while jury would be finding facts. Simply put, while there could be some blowback from making a seemingly incongruous argument to the jury, there was no risk of that in presenting the motion for a finding of not guilty to the judge. Consequently, this court finds that the trial defense counsel was deficient in his performance of duty to the petitioner by not raising the motion to the trial court judge. This finding is but the first hurdle the petitioner must clear in order to prove ineffective assistance of counsel.

This court must now evaluate whether the deficient performance by trial defense counsel prejudiced the petitioner. In other words, is it reasonably probable that the deficient performance caused the result of the trial to be unreliable. The answer to this will turn upon a determination by this habeas court as to whether it is reasonably probable that had the trial court judge been presented with that motion, would she have granted it? To answer that question, this court has carefully [reviewed] all of the testimony in the petitioner's criminal trial focusing on the issue of whether there was any evidence that a reasonably prudent jury might use to decide the restraint issue adversely to the government. First of all, we have the fact that the jury did not make such a finding. Moreover, there is nothing in the record that in any way makes that finding clearly erroneous or unreasonable. In other words, a reading of the transcript clearly shows that the facts surrounding the movement and restraint of the victim in this case shows that there is more than ample evidence by which any reasonable jury could conclude that "*that the restraint was not merely incidental to the commission of some other, separate crime.*" It is expressly found that any reasonable jurist, and in particular, the trial judge in the petitioner's criminal case, would agree with that assessment and would deny a motion for a finding of not guilty and allow the factual issue to go to the jury. Consequently, the petitioner has failed to show the second prong of *Strickland*, that is, prejudice, and relief shall not be forthcoming.[7]

### CLAIM OF ACTUAL INNOCENCE

In count one of the amended petition, the petitioner has alleged a claim of actual innocence. This claim shall fail as well for the following reasons. The Supreme Court in *Summerville* discussed the differences between a petition for a new trial, which has a three year statute of limitations, except when premised on newly discovered DNA *evidence*, and a petition for a writ of habeas corpus, for which there *is* no applicable statute of limitations.[8] *Summerville* v. *Warden*, supra,

229 Conn. 426–27; General Statutes § 52-582.[9]

"Principally because of the absence of any statute of limitations governing the writ of habeas corpus . . . the standards governing the issuance of the writ based on a claim of actual innocence are not, however, necessarily the same as those governing a petition for a new trial based upon newly discovered evidence. Employing the same standard for both petitions would ignore the legislative determination embodied in the statute of limitations. The principal purpose of the writ of habeas corpus is to serve as a bulwark against violations of fundamental fairness. . . . Whether there has been such a violation must be determined, not only with regard to the petitioner's claim, but also with regard to the effect of the issuance of the writ on the strong interest in the finality of judgments . . . and the other interests embodied in the statute of limitations. . . .

"[The Supreme Court has], therefore, imposed on a habeas corpus petitioner certain requirements that reflect these policy interests. For example, [it has] imposed a heavy burden of proof on the petitioner to establish that he is entitled to a new trial. . . . [The Supreme Court has] also adopted the 'cause and prejudice' standard for the reviewability in a habeas corpus proceeding of constitutional claims not adequately preserved at trial . . . .

"Those requirements, which stem largely from the fact that a habeas corpus petition may properly be brought at any time, rest in significant part on the costs to the public interests that are incurred when the state is required to retry a defendant many years after the events in question. . . . The wholesale transplanting of the petition for a new trial standard to a habeas corpus petition based on a claim of actual innocence would not give due respect to those considerations. The petitioner who thinks that there is newly discovered evidence sufficient to overturn his verdict would have no incentive to bring that evidence before the court within the three year limitations period, and there would be no consequence of his failure to do so.[10] . . . Thus, just as a habeas corpus petition may not be employed as a substitute for a direct appeal . . . a habeas corpus petition is not a surrogate for a time barred petition for a new trial." (Citations omitted; footnote omitted.) *Summerville* v. *Warden*, supra, 229 Conn. 427–29.

Several years after *Summerville*, the Supreme Court decided *Miller* v. *Commissioner of Correction*, 242 Conn. 745, 700 A.2d 1108 (1997). *Miller* "present[ed] a question that [the court had] found unnecessary to answer in *Summerville*, namely, what is the legal standard [of persuasion] that must be met by a habeas corpus petitioner claiming actual innocence in order to gain a new trial at which his guilt or innocence will again be determined?" (Internal quotation marks omit-

ted.) Id., 746.

The *Miller* court began its consideration of the standard of proof with the following remark: "In doing so, we assume without deciding that the petitioner's claim must be based on 'new evidence,' that is, evidence that is not cumulative, was not available to the petitioner at his criminal trial, and could not have been discovered by him at that time through due diligence. See *Summerville* v. *Warden*, supra, 229 Conn. 426. We make this assumption for the purposes of the present case because: (1) the habeas court applied that requirement to the petitioner in this case, and determined that the petitioner's evidence met that requirement; (2) the petitioner agreed that this should be one of the components of his burden; and (3) the parties do not dispute that the petitioner's evidence is newly discovered. We recently certified for appeal the specific question of whether a freestanding claim of actual innocence must be based on new evidence. *Williams* v. *Commissioner of Correction*, 240 Conn. 547, 548, 692 A.2d 1231 (1997). We subsequently dismissed that certified appeal as having been improvidently granted, however, because the petitioner in that case also agreed with the 'new evidence' requirement. Id., 548–49." (Emphasis omitted.) *Miller* v. *Commissioner of Correction*, supra, 242 Conn. 789–90 n.29.

Now, more than a decade after deciding *Miller*, the Supreme Court still has not had occasion to address the 'new evidence' requirement. Even as recently as 2009, the court observed that it had "stated [in *Clarke* v. *Commissioner of Correction*, 249 Conn. 350, 358, 732 A.2d 754 (1999)], that whether a claim of actual innocence must be based on newly discovered evidence is still an open question in our habeas jurisprudence. In the present case, both parties and the habeas court acknowledge, explicitly and implicitly, that our appellate courts do require a claim of actual innocence to be based on newly discovered evidence. See *Johnson* v. *Commissioner of Correction*, 101 Conn. App. 465, 470–71, 922 A.2d 221 (2007). Because the respondent does not challenge the petitioner's claim on those grounds and the habeas court proceeded as if the evidence was newly discovered, we are not called upon to resolve this question. See *Miller* v. *Commissioner of Correction*, supra, 242 Conn. 789 n.29 (assuming, without deciding, that actual innocence claim must be based on new evidence)." *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 81 n.10, 967 A.2d 41 (2009).

The Appellate Court, unlike our Supreme Court, *has* held that newly discovered evidence *is* necessary to pursue an actual innocence claim via a habeas corpus petition. "[A] claim of actual innocence must be based on newly discovered evidence. *Clarke* v. *Commissioner of Correction*, 43 Conn. App. 374, 379, 682 A.2d 618 (1996), appeal dismissed, 249 Conn. 350, 732 A.2d 754

(1999). [A] writ of habeas corpus cannot issue unless the petitioner first demonstrates that the evidence put forth in support of his claim of actual innocence is newly discovered. *Williams* v. *Commissioner of Correction*, 41 Conn. App. 515, 530, 677 A.2d 1 (1996), appeal dismissed, 240 Conn. 547, 692 A.2d 1231 (1997). This evidentiary burden is satisfied if a petitioner can demonstrate, by a preponderance of the evidence, that the proffered evidence could not have been discovered prior to the petitioner's criminal trial by the exercise of due diligence. . . . *Batts* v. *Commissioner of Correction*, [85 Conn. App. 723, 726–27, 858 A.2d 856, cert. denied, 272 Conn. 907, 863 A.2d 697 (2004)]." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, supra, 101 Conn. App. 470. Consequently, even though the final resolution of the newly discovered evidence standard has yet to be addressed by the Supreme Court, it is beyond argument that insofar as any Superior Court considering a [claim] of actual innocence in a habeas petition, the matter is closed. The Appellate Court has spoken, and that precedent is binding in Superior Court unless and until changed by the Supreme Court.

To summarize, then, the newly discovered evidence requirement is satisfied if the evidence is: (1) not cumulative; (2) was not available to the petitioner at the time of his criminal trial; and (3) could not have been discovered by him at that time through the exercise of due diligence.

The newly discovered evidence in these petitions that has been alleged by the petitioner consists entirely of the testimony of one Ian Wright, currently an inmate in the Department of Correction and a self-styled "jailhouse lawyer." Mr. Wright, a convicted felon, testified in the instant habeas case and reported that, about one year ago, he engaged inmate Stephen "Sticky" Nelson in conversation and that Mr. Nelson admitted he had lied in his testimony before the petitioner's trial. Putting aside the obvious credibility issues inherent with this testimony, it is arguable that the testimony of Mr. Wright was not available to the petitioner at his trial and, since the alleged conversation took place some four years after the conclusion of the petitioner's trial, could not have been discovered by him at that time even with the exercise of due diligence. However, the evidence is certainly cumulative and cannot be considered newly discovered.

The discrediting of the testimony of Mr. Nelson was a key component of the trial strategy of trial defense counsel, and he did so in a highly professional manner. Indeed, the cross-examination went a long way to discredit the testimony of Mr. Nelson at trial. Notwithstanding, the petitioner was convicted in large part because there was DNA evidence linking him to the crime, cell phone records linking him to the crime and

his evasive answers given to the police as to his location at the time of the crime. Had inmate Wright been available for trial and testified as he did in the habeas trial, his testimony, even if deemed credible by the jury (a most unlikely event, given everything surrounding it) would not have been likely to have swayed the jury to an acquittal. Moreover, while inmate Wright's hearsay testimony was admissible under § 8-6 (4) of the Connecticut Code of Evidence at the habeas trial only because inmate Nelson exercised his fifth amendment right to silence, Nelson *did* testify at the petitioner's criminal trial, so Wright's testimony would not have been admissible. Consequently, the "evidence" would have been cumulative, and the actual innocence claim falls on that basis.

As a result of all of the foregoing, the petition for a writ of habeas corpus is, therefore, denied and the petition dismissed.

\* Affirmed. *Thompson* v. *Commissioner of Correction*, 172 Conn. App. 139,      A.3d      (2017).

[1] *State* v. *Thompson*, 128 Conn. App. 296, 298–99, 17 A.3d 488 (2011), cert. denied, 303 Conn. 928, 36 A.3d 241 (2012).

[2] This may seem to be difficult for a layman to accept, given the oft-repeated phrase that "one is innocent until proven guilty." However, in a habeas proceeding, the petitioner is not innocent and has, in fact, been already proven guilty beyond all reasonable doubt. Moreover, a habeas petitioner has more likely than not had the opportunity to have at least one appellate court review the case to determine if there have been any errors of law that were made by the trial court. Given that a habeas petition is often called the "court of last resort," it should not be unexpected that the burden of showing an irregularity must now rest with the petitioner.

[3] Edward I reigned in England in the late thirteenth century A.D.

[4] This is a particularly important consideration in the instant case. The petitioner has had his case reviewed by both the state Appellate and Supreme Courts. [*State* v. *Thompson*, 128 Conn. App. 296, 17 A.3d 488 (2011), cert. denied, 303 Conn. 928, 36 A.3d 241 (2012).] The majority of the evidence presented to the court during the habeas trial revolved around what took place on the evening of [August 10, 2004]. The petitioner was, in essence, attempting to relitigate matters that have been previously litigated and affirmed on appeal.

[5] "The requirement that guilt of a criminal charge be established by proof beyond a reasonable doubt dates at least from our early years as a Nation. The demand for a higher degree of persuasion in criminal cases was recurrently expressed from ancient times, [though] its crystallization into the formula beyond a reasonable doubt seems to have occurred as late as 1798. It is now accepted in common law jurisdictions as the measure of persuasion by which the prosecution must convince the trier of all the essential elements of guilt." (Internal quotation marks omitted.) *In re Winship*, supra, 397 U.S. 361.

[6] There is a very recent Appellate Court decision, *Hinds* v. *Commissioner of Correction*, 151 Conn. App. 837, 97 A.3d 986 (Official Release Date: August 5, 2014), that affirmed a decision by a habeas court that ordered a new trial for a petitioner where the trial court failed to give a *Salamon* instruction to the jury. It is this key difference between the instant case and the *Hinds* case that does not require this court to follow *Hinds*.

[7] The same line of reasoning shall be applied to the argument that the petitioner's appellate counsel was ineffective, thereby causing count three to fail.

[8] Although there is a sort of *de facto* statute of limitations in that a habeas petitioner must be "in the custody of the commissioner" in order for the court to have jurisdiction. See *Lebron* v. *Commissioner of Correction*, 274 Conn. 507, 876 A.2d 1178 (2005).

[9] General Statutes § 52-582 mandates that: "No petition for a new trial in any civil or criminal proceeding shall be brought but within three years next after the rendition of the judgment or decree complained of, except that a petition based on DNA (deoxyribonucleic acid) evidence that was

not discoverable or available at the time of the original trial may be brought at any time after the discovery or availability of such new evidence."

Interestingly, the first clause does not mention newly discovered evidence.

[10] Accordingly, the requirement in actual innocence claims raised via habeas corpus of 'newly discovered' evidence may be viewed as another requirement that reflects the same policy reasons. Section 52-582 does not state that non-DNA based claims must be premised on newly discovered evidence. Thus, the petition for a new trial with the three year statute of limitations does not require newly discovered evidence; the petition for a writ of habeas corpus with no statute of limitations requires newly discovered evidence.